**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA LEE GUISINGER**, | : | |
| 118 E. Jefferson St. | : | |
| New Lexington, OH 43764 | : | Civil Action No.: 2:17-cv-285 |
| | : | |
| Plaintiff, | : | JUDGE |
| | : | |
| v. | : | MAGISTRATE JUDGE |
| | : | |
| **E.A. TOW TRANSPORT, INC.,** | : | |
| **d/b/a E.A. TOWING** | : | |
| c/o Registered Agent | : | **Jury Demand Endorsed Hereon** |
| Jamie Weiler | : | |
| 1820 Willow Mirror Bend | : | |
| Columbus, OH 43228 | : | |
| | : | |
| and | : | |
| | : | |
| **ELIAS ARANA** | : | |
| 7996 Hollywood St. | : | |
| Commerce City, CO 80022 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

NOW COMES Plaintiff Josh Guisinger ("Plaintiff") and proffers this Complaint for damages against Defendant E.A. Tow Transport, Inc. (hereinafter "EA Towing") and Defendant Elias Arana ("Defendant Arana").

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111").

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3.      This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4.      Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed his job duties there, and Defendants are doing and have done substantial business in the Southern District of Ohio.

## THE PARTIES

5.      Plaintiff Guisinger is an individual, a United States citizen, and a resident of the state of Ohio.  Plaintiff resides in Perry County, Ohio.

6.      Defendant Arana is an individual and a United States citizen.  Upon information and belief, Defendant Arana resides in Commerce City, Colorado.

7.      Defendant E.A. Towing is a foreign corporation registered to do business in Ohio.

8.      At all times relevant herein, the Plaintiff was an employee of Defendants as that term is defined in the FLSA and O.R.C. Chapter 4111.

9.      At all times relevant herein, Defendants were covered employers as that term is defined in the FLSA and O.R.C. Chapter 4111.

10.     At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants' constituted an enterprise engaged in commerce within the meaning of the FLSA.

2

## FACTUAL BACKGROUND

11.     Plaintiff first began his employment with Defendants in or around October 2015.

12.     Defendant is in the business of transporting personal and commercial vehicles that have been stranded, wrecked, or abandoned.

13.     Upon information and belief, Defendant Arana is the owner of E.A. Towing and sets the payroll policies and practices for Defendants' employees.

14.     Upon information and belief, Defendant E.A. Towing currently maintains two locations—one located in Commerce City, Colorado ("the Colorado location") and the other located at 1601 Thrailkill Road in Grove City, Ohio ("the Columbus location").

15.     Plaintiff was employed at Defendants' Columbus location as a tow truck driver.

16.     Defendants employ approximately eight tow truck drivers, including Plaintiff, at its Columbus location.

17.     During Plaintiff's employment, Defendants employed an office manager and a dispatcher in the Columbus office, in addition to the tow truck drivers.

18.     Throughout Plaintiff's entire employment with Defendant, Plaintiff drove a truck that could tow up to two vehicles at once and had a gross vehicle weight of 16,500 pounds.

19.     Plaintiff primary job duty was responding to calls to tow passenger vehicles and mobile homes from impound lots, body shops, and private residences to various insurance companies throughout Ohio.

20.     Plaintiff does not travel interstate as part of his job duties.

21.     Plaintiff is not licensed with the Public Utilities Commission of Ohio to drive interstate.

22.     Plaintiff does not hold a Commercial Driver's License ("CDL").

23.     Defendants informed Plaintiff that he was not permitted to cross state lines while performing his job duties.

24.     Through the entire duration of his employment with Defendant, Plaintiff was required to cross state lines on three occasions to retrieve a vehicle from another state and tow it back to Ohio.  The most recent of these trips occurred in or around summer 2016, more than 6 months prior to the end of Plaintiff's employment with Defendant.

25.     On these isolated occasions, Defendants instructed Plaintiff to retrieve this vehicle, knowing Plaintiff was not licensed to provide out-of-state towing.

26.     Defendants told Plaintiff not to stop for gas or food, or to make any purchases while he was completing a towing job outside of Ohio.

27.     Aside from these isolated occasions, Plaintiff did not perform interstate towing duties, nor could Plaintiff have reasonably been expected to make an interstate run, given that he was not licensed to do so.

28.     Plaintiff was paid on a commission-only basis.

29.     Plaintiff's hours worked per week varied.  Plaintiff typically worked between 60 and 70 hours during each week of his employment with Defendants.  This included time spent taking his truck to be serviced, washing his truck, and performing other tasks at Defendants' requests, for which he was not compensated.

30.     Plaintiff was subject to the overtime mandates set forth in the Fair Labor Standards Act ("FLSA").

31.     Plaintiff was not covered by the Motor Carrier Act exemption from overtime compensation set forth in the FLSA, 29 U.S.C. § 213(b)(1).

4

32.     Plaintiff was never paid overtime compensation at a rate of one and one half times his regular rate of pay for all hours worked in a workweek in excess of 40.

33.     Plaintiff resigned from his employment with Defendant on or around January 2, 2017.

## FIRST CAUSE OF ACTION
### 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime

34.     All of the preceding paragraphs are realleged as if fully rewritten herein.

35.     Plaintiff was an employee of Defendants' within the previous three years of the filing of this Complaint.

36.     Plaintiff was paid on a commission-only basis.

37.     Plaintiff was not exempt from the overtime requirements of the FLSA.

38.     Plaintiff was not paid an overtime premium for all hours worked over 40 in a workweek at his regular rate of pay.

39.     Plaintiff regularly worked more than 40 hours per workweek.

40.     Defendants were aware that Plaintiff regularly worked more than 40 hours per week, but did not receive overtime compensation at a rate of one and one-half times his regular rate of pay for hours worked in excess of 40 per week.

41.     Defendants knew or should have known of the overtime payment requirement of the FLSA, and that Plaintiff was a non-exempt employee entitled to overtime compensation for all hours worked per week in excess of 40.

42.     Defendants' refusal to properly compensate Plaintiff as required by the FLSA was willful.

43.     As a result of Defendants' actions, Plaintiff has been damaged.

5

## SECOND CAUSE OF ACTION
### OMFWSA R.C. 4111.03 - Failure to Pay Overtime

44.     All of the preceding paragraphs are realleged as if fully rewritten herein.

45.     This claim is brought under Ohio law.

46.     Defendants' knowing failure to pay Plaintiff overtime wages for hours worked in excess of forty (40) per workweek was a violation of Section 4111.03 of the Ohio Revised Code.

47.     For the Defendants' violations of ORC 4111.03, Plaintiff is entitled to recover unpaid overtime wages, interest, attorneys' fees, and all other remedies available under Ohio law.

## THIRD CAUSE OF ACTION
### R.C. 4113.15 – Failure to Tender Pay by Regular Payday

48.     All of the preceding paragraphs are realleged as if fully rewritten herein.

49.     Plaintiff asserts this claim under R.C. 4113.15, which requires Defendants to pay its employees within thirty (30) days of when they performed compensable work.

50.     At all times relevant herein, Defendants failed to make proper wage payments to Plaintiff for all overtime compensation for hours worked in excess of 40 in a workweek.

51.     Additionally, Defendants failed to pay plaintiff his accrued vacation pay, to which he was entitled at the time of his resignation.

52.     By failing to make the wage payments within 30 days of when such payments were due, Defendant has violated R.C. 4113.15.

## FOURTH CAUSE OF ACTION
### Breach of Contract

53.     All of the preceding paragraphs are realleged as if fully rewritten herein.

54.     Plaintiff asserts this claim under Ohio law.

6

55.     At the time Plaintiff was hired, he was provided with a document describing his commission pay structure.  Among other things, the document stated that Plaintiff would be paid a commission of 20% of the price of each vehicle he delivers.

56.     In or around early October 2016, Plaintiff was provided with a commission raise. Plaintiff was informed that he would be getting a raise from 20% commission to 25% commission for each vehicle delivered, effective immediately.

57.     This agreement was reduced to writing in the form of a contract signed by both Plaintiff and Defendants' office manager, Rhonda Romine, on October 7, 2016.

58.     The agreement stated that Plaintiff would continue to maintain his consistent attendance, to be punctual, to deliver vehicles in a timely and safe manner, and to cooperate with management and other employees, and in exchange, Defendants agreed to give Plaintiff a raise from 20% to 25% commission pay for each vehicle delivered.

59.     Plaintiff complied with his obligations under the contract.

60.     However, Defendants never paid Plaintiff the 25% commission pay on vehicles delivered.  Plaintiff continued to be compensated at a 20% commission pay rate throughout the remainder of his employment.

61.     Defendants' failure to pay Plaintiff the 25% commission in accordance with the express agreement to do so was is a material breach of the contract between Plaintiff and Defendants.

62.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered compensable damage.

**FIFTH CAUSE OF ACTION**
**Promissory Estoppel/Breach of Implied Contract**
**Failure to Pay Accrued Vacation Pay**

63.     All of the preceding paragraphs are realleged as if fully rewritten herein.

64.     Plaintiff asserts this claim under Ohio law.

65.     At the time Plaintiff was hired, Defendants informed Plaintiff that after 1 year of employment with Defendants, he would begin to accrue vacation pay.

66.     Specifically, Defendants promised that Plaintiff would accrue one week of vacation pay (i.e. 5 days) at the anniversary of each year of his employment with Defendants.   One week's vacation pay would be calculated by taking the average of Plaintiff's weekly commission pay based upon the previous two pay periods.

67.     Plaintiff was told that Defendants would pay his unused accrued vacation pay if Plaintiff resigned, as long as Plaintiff provided a two weeks' notice.

68.     Plaintiff justifiably relied upon Defendants' promises by continuing to complete his job duties during his employment, with the understanding that he would accrue vacation pay in accordance with Defendants' promises.

69.     Plaintiff accrued one week of vacation pay in October 2016—on his one year anniversary of his employment with Defendants.

70.     Plaintiff did not use his accrued vacation pay prior to resigning from Defendants' employment.

71.     Plaintiff provided Defendants with a two weeks' notice of his intent to resign. Plaintiff resigned on January 2, 2017.

72.     Defendants failed to fulfill their obligations and breached their obligation to Plaintiff to provide him with his accrued, unused vacation pay following his resignation from Defendants' employment.

73.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered compensable damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA and the OMFWSA;

B. An injunction against Defendants from engaging in each of the unlawful practices, policies, and patters set forth herein;

C. An award of monetary damages, including unpaid overtime wages due under the FLSA, OMFWSA, and R.C. § 4113.15;

D. An award of liquidated damages and/or treble damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and R.C. § 4113.15;

E. An award of prejudgment and post judgment interest;

F. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

G. Such other legal and equitable relief as this Court deems appropriate, but in any event not less than $75,000.00.

Respectfully submitted,

/s/*Greg Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com)*
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph:  (614) 610-4134
Fax:  (513) 826-9311
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiffs demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Greg R. Mansell*_____
Greg R. Mansell (0085197)